(No. 38857.—

CATERPILLAR TRACTOR Co., Appellant, *v.* THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed March 18, 1965.*

McDermott, Will & Emery, of Chicago, (Hamilton Smith and Frank J. Uvena, of counsel,) for appellant.

William G. Clark, Attorney General, of Springfield, (Richard A. Michael and John J. O'Toole, Assistant Attorneys General, of counsel,) for appellee.

Mr. Justice House delivered the opinion of the court:

The question presented is whether there is liability for a tax under the Use Tax Act upon a repeat order from a supplier of special order machinery, where the seller had originally designed and produced a special tool while primarily engaged in a service occupation.

An administrative review proceeding was filed by plaintiff, Caterpillar Tractor Co., in the circuit court of Tazewell County to review a denial by the Department of Revenue of a refund of taxes paid in connection with the purchase of two gear shaper cutters. The circuit court affirmed the Department's decision and plaintiff appeals directly to this court since the revenue is involved.

In 1946 Caterpillar ordered six gear shaper cutters from National Tool Company, Cleveland, Ohio, primarily for the latter's engineering and other scientific skill to design and produce the cutters on special order to meet Caterpillar's particular needs. Thereafter, two additional cutters were ordered in 1952, three in 1954 and two in 1955, in addition to the two in 1964 now under scrutiny as to tax consequences. All were according to the original design except for a reduction in outside diameter of the cutter from .995 to .990 of an inch in 1952, and no alterations were thereafter made.

The Department asserts the taxability of the transaction under revised Rule 3 (1) of the Retailers' Occupation Tax Regulations (incorporated by reference into the Use Tax

Regulations), which provides in part: "Also, effective January 1, 1964, even if an item qualifies for retailers' occupation tax exemption under paragraph 2 of this rule, subsequent sales by the seller of the same item without material change to the purchaser for use (so-called repeat orders) are subject to the retailers' occupation tax because the skill that is involved after the first item is made is production skill and not specialized engineering and design skill."

Caterpillar contends that the quoted portion of the revised rule is based on two misconceptions. The first is alleged to be that the Department misconceives the purport of this court's opinion in *Caterpillar* v. *Department of Revenue,* 29 Ill.2d 564. It expresses doubt that we intended the broad interpretation that a supplier is, in all cases, not engaged in a service occupation unless it substantially exercises its design and engineering skills in the production of the machinery or equipment it supplies. Regardless of the reason for amending the rule, the *Caterpillar* case did not so generalize but held that it is necessary to look at the whole transaction to find its substance. In so doing Caterpillar followed *Sterling Steel Casting Co.* v. *Department of Revenue,* 7 Ill.2d 244, and *Ingersoll Milling Machine Co.* v. *Department of Revenue,* 405 Ill. 367, where it was pointed out that facts and situations vary with each case so that it is difficult to apply a general characterization.

The second alleged misconception is that the revised rule makes it mandatory to tax repeat orders where suppliers do not exercise their design and engineering skills when producing the same item without material change. In support of this view Caterpillar cites cases dealing with electrotypers, (*A.B.C. Electrotype Co.* v. *Ames,* 364 Ill. 360,) commercial printers, (*Adair Printing Co.* v. *Ames,* 364 Ill. 342,) and photostaters, (*Burgess Co.* v. *Ames,* 359 Ill. 427,) all of which involve only production and yet are primarily engaged in service. Such cases as these are based on entirely different factual situations and revised Rule

3(1) does not purport to cover repeat orders of those types.

Caterpillar says that while it may be true that some or even most suppliers do not exercise design skills when filling a reorder, that it is not true here. It takes the position that while National Tool's extensive design review did not result in any changes, engineering skill was involved to an appreciable degree. The price of the two cutters was $146. The purchase order required National to "review design, develop and produce" them. The engineering or recalculation and review amounted to 5.1% of the total cost. It is argued that this percentage is comparable with the figures involved in the transaction with the Dearborn Tool and Die Company reviewed in the prior *Caterpillar* case where dimensions were supplied and others were changed by Dearborn and we held the transaction not taxable.

After a review of all the facts, we are of the opinion that the Department of Revenue was justified in finding that Caterpillar was primarily interested in purchasing the cutters, which apparently had been found satisfactory, rather than buying the service of National as it did originally when the cutters were designed.

The judgment of the circuit court of Tazewell County is affirmed.

*Judgment affirmed.*