**Allied Van Lines, Inc., a Corporation, and Ardapple Storage & Moving Co., Inc., a Corporation, Plaintiffs-Appellees, v. Paul Powell, Secretary of State of the State of Illinois, Defendant-Appellant.**

**Gen. No. 11,138.**

Fourth District.

August 31, 1970.

William J. Scott, Attorney General of State of Illinois, of Chicago (Francis T. Crowe, Herman R. Tavins, and A. Zola Groves, Assistant Attorneys General, of counsel), for appellant.

John P. McCarthy, Richard P. Hefferan, of Chicago, and C. Terry Lindner, of Giffin, Winning, Lindner, Newkirk & Cohen, of Springfield, for appellees.

TRAPP, J.

The Secretary of State of the State of Illinois, as defendant, appeals from a judgment of the Circuit Court entered July 29, 1968, reversing an administrative decision of the Secretary. His decision approved the denial by the Office of the Secretary of State of an application by plaintiff, Ardapple Storage and Moving Company, Inc., for reciprocity plates for vehicles of the second division, and dismissal of a petition of plaintiff, Allied Van Lines, Inc., for administrative relief.

Allied Van Lines, Inc. is a not-for-profit Delaware corporation licensed to do business in Illinois, a common carrier by motor vehicle of household goods for hire in interstate commerce certificated by the Interstate Com-

merce Commission and also by the Illinois Commerce Commission, having a principal place of business in the Village of Broadview, Cook County, Illinois. Allied has 800 agent members domiciled in 48 adjacent states, and is owned by 500 of its agent members, each of whom holds one share of Allied's voting stock. Through Allied's standard form of printed lease, each of Allied's agent members leased to Allied one or more of its motor vehicles suitable for transportation of household goods for a term of two (2) years, and from year to year thereafter unless terminated. Allied has no right to purchase. In all cases the equipment and personnel are furnished by the agent members and expenses for the same are paid by the agent member.

The lease provides that the lessee shall have exclusive supervision and control over the operation of the vehicle, driver and helper, including the time and place of arrival, departure, detention, routing and manner of operation. The interstate operation is under the authority of Allied's certification.

Allied Van Lines, Inc. began as an association of long distance household goods haulers whose purpose was to avoid empty return hauls from long trips by cooperation in the use of facilities. The United States Justice Department, in conjunction with the Interstate Commerce Commission, set forth specific restrictions when Allied's operating authority was granted. There must be a certain technical control exercised by any certificated carrier. In the order of the Federal Commission it is provided that Allied owns no equipment, employs no drivers and must use the equipment and personnel of its members.

Ardapple is an Indiana corporation and resident, which owns four vehicles that it leases to Allied under a standard form lease. Interstate shipments are registered with Allied and shipped under an Allied bill of lading. The vehicles are registered by Ardapple in In-

diana. Each vehicle, so leased, bears Allied's name thereon.

Pursuant to the authority of chapter 95½, § 3–402, subd (B) (4), Ill Rev Stats 1957, the Secretary of State of Illinois, on September 15, 1958, issued a written Declaration of Reciprocity with regard to Indiana which provided in part (Art II, § 2, subparagraph (6)):

> "(6) Notwithstanding anything herein to the contrary, if such commercial vehicle is a leased vehicle for the purpose of transporting household goods, such vehicle must be properly licensed and registered in the State of residence of the lessor and must display current, valid registration or license plates issued for such vehicle by the State of residence of the owner and display any reciprocity permit or plates and identification required by either of the states."

There has been no written revocation or amendment of the said Declaration of Reciprocity by the Secretary of State. Prior to January 1, 1967, Ardapple applied to the Secretary of State of Illinois and received reciprocity plates which it displayed on the vehicles. There was no annual reciprocity registration, but by letter of March 24, 1967, the defendant Secretary of State notified all persons claiming reciprocity in Illinois that with respect to vehicles of the second division they must, effective April 1, 1967, file an "Illinois Reciprocity Qualification Form." Ardapple submitted the form and applied for reciprocity.

By letter of May 13, 1967, the defendant Secretary of State notified Ardapple as follows:

> "We are in receipt of your Application for Illinois Reciprocity Plates and according to Item #7 of your qualification form you are operating under Allied Van Lines authority.

"Vehicles which are subject to long term lease agreements must be qualified in the name of the lessee."

Allied applied to the Secretary of State for administrative relief pursuant to chapter 95½, § 3–402, subd B(7), Ill Rev Stats 1967. Thereafter, Ardapple also petitioned for administrative relief. The matters were heard together. The Secretary of State ruled that Ardapple's application for Illinois reciprocity privileges was properly denied, and further ruled that Allied was not an "aggrieved" party within the meaning of such section and its petition was dismissed.

Allied was advised by the Supervisor of the Reciprocity and Prorate Division of the Office of the Secretary of State, that as of July 1, 1967, Allied, like any other carrier, would be expected to prorate in Illinois its entire fleet of vehicles based in those states with which Illinois was then reciprocal, and effective immediately all current applications for reciprocity plates filed by Allied's agents located in any reciprocal states would be denied.

█ We should first dispose of the contention that Allied is not an aggrieved party. While it is true that Allied did not make any application to the Secretary of State, and therefore, in such sense Allied was not denied a benefit nor was a privilege formerly granted to it revoked or suspended by formal order, nevertheless, it was officially advised that it could not operate in Illinois upon its agents' reciprocity privileges, and that it would be expected to prorate leased vehicles. This action had all of the practical effect of revoking what had formerly been established as a privilege by official order of the Secretary of State in the Declaration of Reciprocity of September 15, 1958, above noted.

The term "aggrieved" would certainly include cessation of a privilege to operate on the highway without

registration and payment of a prorate fee. See Weer v. Gand, 88 Ill 490, 491, where a surety on a guardian's bond, though not a party to the litigation of a claim, was allowed to appeal a claim classification under a statute conferring a right of appeal on any person "aggrieved." See also Moulding v. Wilhartz, 169 Ill 422, 428, 48 NE 189; In re Everly's Estate, 322 Ill App 363, 54 NE2d 627 and Lee v. Nash, 3 Ill App2d 371, 122 NE2d 282. It also appears to us that without formal amendment, the Secretary of State suspended generally the privileges granted to Allied as a lessee to operate in Illinois upon the Indiana's lessor's reciprocity privileges granted by the Declaration of Reciprocity of September 15, 1958. Further it appears, that by the lease arrangement, Allied had rights under its contract which could no longer be exercised in the same manner when Ardapple's reciprocity was denied.

At the time of the hearing afforded by the Secretary of State and at the time of the order of the trial court on administrative review, the statute (c 95½, § 1–140, Ill Rev Stats 1965) defined an owner as one who held title to a motor vehicle, or if there was a conditional sale or lease agreement with right of purchase and immediate possession in vendee or lessee, or a mortgage, then the vendee, lessee or mortgagor was the owner. Section 3–402, subd (B) (1), Ill Rev Stats 1965, provided that a nonresident owner could operate without registration or paying fees if Illinois had a reciprocity declaration pursuant to which the vehicle was operated, if the vehicle was registered in the State of the owner's residence and had reciprocity permit.

■ Ardapple qualified in all respects for a reciprocity permit at the time of the trial in the Circuit Court under the Administrative Review Act. The Secretary of State took the view that by reason of the "long term lease" Allied, and not Ardapple, was the owner. The

only exceptions to the definition of owner as the holder of the title were a mortgagor or a lessee or vendee with a right to purchase and immediate possession under chapter 95½, § 1–140, Ill Rev Stats 1965. The defendant had no authority to redefine "owner" in terms different from the statute. Additionally, the Secretary of State had, by the Declaration of Reciprocity of September 15, 1958, above, defined a "lessor" as owner and specified that registration and plates issued by the state of the owner's residence would suffice for reciprocity. We cannot accept defendant's argument that the Motor Carrier of Property Act (c 95½, § 282.2(16), Ill Rev Stats 1967), which defines a lease as a document providing for exclusive possession of a vehicle in the lessee for a specific time "as if such lessee were the owner" authorized the Secretary of State to expand the definition of owner in the Motor Vehicle Act.

It is next argued that the action of the Secretary of State in reference to Ardapple's application for reciprocity privileges did not deny reciprocity privileges to Ardapple, but merely ruled that Allied, the lessee and operator, had to make the application for the reciprocity plates. Defendant argues thus:

> "However, the Secretary of State did not deny reciprocity privileges and exemptions to any Allied agent nor to Ardapple, but urged that Allied, the lessee and sole operator of the vehicles in question, had to make the application for reciprocity plates. This, Allied did not do, and was therefore not denied plates. Ardapple was not denied reciprocity privileges as stated; Ardapple was merely told that its vehicles could be qualified only upon Allied's application as the carrier and lessee in full control while those vehicles were in Illinois."

An examination of the Motor Vehicle Act reveals that the above argument fails to disclose that there are two

kinds of reciprocity provided, and that Ardapple was denied the residence reciprocity which would enable it to have the vehicles operated by its lessee without registration and payment of fees. (Chapter 95½, § 3–402, subd B, Ill Rev Stats 1967), has a number of subdivisions. Subparagraph (1) applies only to a nonresident such an Ardapple, and it provides for "operation of such vehicle within this State without registering such vehicle in, or paying any fees to this State . . . ." Subparagraph (2) applied to "any motor vehicle" regardless of the residence of the owner. Since Allied has been found to be a resident of Illinois, it cannot qualify under subparagraph (1). If Allied should apply under subparagraph (2), it would be admitting that it is the "owner" and not the lessee. Additionally, subparagraph (2) does not permit operation without registration or without payment of fees. It requires, in subparagraph 2(b), as one of the conditions:

> "(b) that such vehicle is part of a fleet of vehicles owned or operated by the same person who registers such fleet of vehicles pro rata among the various States in which such fleet operates; . . . ."

It further requires that a portion of the fleet be registered with the Secretary of State of Illinois based on ratio of miles in Illinois to miles travelled in all jurisdictions, or some other formula. Accordingly, the position of the Secretary of State was that Ardapple could not obtain its former reciprocity status of operation without registration and payment of fees because it is not the "owner" as now defined by the Secretary. This former status is sometimes called residence reciprocity. The kind of reciprocity which it could obtain would be to have Allied, an Illinois resident, apply under chapter 95½, § 3–402, subd B(2), for "apportionment reciprocity" and pay a fee on a fleet apportionment on a mileage ratio.

295

The clear difference between the "residence reciprocity" and the "apportionment reciprocity" provided by the Illinois Statute is thoroughly explained in the "Historical and Source Comment" in Illinois Annotated Statutes, c 95½, § 3–402.

We are further asked to declare retroactive an amendment of chapter 95½, § 1–140, Ill Rev Stats 1967, which amendment was enacted by House Bill 2637 approved August 21, 1968. This amendment added to the definition of "owner" the lessee "in the event a lessee of such motor vehicle is entitled to possession or control." At all events, this act was approved after the decision in the trial court, and we could not classify it as a clarifying amendment.

We are asked to support the Secretary of State's position in this case by the Secretary of State's power to make, amend and rescind rules under chapter 95½, § 2–104(b), Ill Rev Stats 1967. It should first be observed that the Secretary of State has not, in fact, amended the Declaration of Reciprocity of September 15, 1958, above referred to. Again, the rule making authority is to be executed in accordance with "An Act concerning Administrative Rules," approved June 14, 1951 (c 127, § 263, Ill Rev Stats 1967). There is nothing in this record to show that the Secretary of State attempted to formulate a "rule." In passing, we question the validity of the distinction between a "lease" and a "long term lease." Finally, at the time of the trial the statutory definition of "owner" was clear, and we do not find any authority granted to the Secretary of State to change the definition.

■ ■ It is urged that administrative decisions of the Secretary of State are prima facie correct. Conceding this principle, it is also true that questions of law determined by the administrative body are reviewable. Caterpillar Tractor Co. v. Department of Revenue, 29

Ill2d 564, 194 NE2d 257, 258; Wallace v. Annunzio, 411 Ill 172, 175, 103 NE2d 467. No issues of fact are presented.

The judgment of the trial court is affirmed.

Affirmed.

CRAVEN, P. J. and SMITH, J., concur.