INTERSTATE MATERIAL CORPORATION, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

First District (5th Division)   No. 1—93—0920

Opinion filed August 25, 1995.

Rufus Cook and Barbara J. Revak, both of Cook & Revak, Ltd., of Chicago, for petitioner.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for respondent Human Rights Commission.

Ronald B. Schwartz, of Chicago-Kent College of Law, of Chicago, for respondent William Thomas.

Naomi Avendano and Allen Cherry, both of Legal Assistance Foundation of Chicago, of Chicago, for respondent Donald Brandy.

JUSTICE GORDON delivered the opinion of the court:

On June 9, 1986, and June 11, 1986, respondents, Donald Brandy and William Thomas, respectively, filed charges with the Illinois Department of Human Rights alleging purposeful discrimination by Interstate Material Corporation, hereinafter referred to as "Interstate," in violation of sections 2—102(A) and 6—101(A) of the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, pars. 2—102(A), 6—101(A)). They alleged that Interstate discriminated against them because of their race when it laid them off while retaining others less senior but of a different race and also alleged that Interstate retaliated against them by withholding wages due them because they reported the alleged discriminatory treatment to a union representative who was not affiliated with Interstate.

In May 1987, when the Department of Human Rights did not complete its investigation within the statutory 300-day time period (Ill. Rev. Stat. 1987, ch. 68, par. 7—102(G)), Brandy and Thomas filed complaints with the Illinois Human Rights Commission (the Commission). At the request of the complainants, their cases were consolidated by the Commission in June 1987. On October 4, 1989, one week before the scheduled administrative hearing, Brandy was granted leave to amend his complaint by deleting his retaliation claim; and on the day of hearing, Thomas' motion for voluntary withdrawal of his entire complaint was granted.

On June 27, 1991, the administrative law judge (ALJ) entered an interim recommended order and decision sustaining Brandy's discrimination charge and directed that he be reinstated and awarded back pay of $44,345 as well as attorney fees and costs. The ALJ ordered that Interstate cease and desist from discriminating on the basis of race in terminating or laying off employees and recommended the denial of Interstate's motion for sanctions against Brandy and Thomas based on the late withdrawal of Brandy's retaliation charge and Thomas' entire complaint. A recommended order and decision was entered by the ALJ on September 11, 1991, incorporating the interim order and recommending that Interstate be ordered to pay Brandy $73,125.20 for attorney fees and $435.33 for costs. On February 8, 1993, the Human Rights Commission issued its order and decision rejecting Interstate's exceptions and affirming and adopting the recommended order and decision of the ALJ. Interstate filed a direct appeal to this court pursuant to section 8—111 of the Human Rights

Act (775 ILCS 5/8—111 (West 1992)) and Supreme Court Rule 335 (134 Ill. 2d R. 335).[1]

On appeal, Interstate contends that the Commission's finding that Interstate discriminated against Brandy on the basis of race was against the manifest weight of the evidence; that the Commission's award of back pay and attorney fees to Brandy was an abuse of discretion; and that the Commission's rejection of Interstate's motion for sanctions against Brandy and Thomas was an abuse of discretion.[2]

---

[1]During the course of the instant appeal, Interstate filed a motion for leave to supplement the record with four documents: Interstate's answer to Thomas' charge; Thomas' answers and supplemental answers to Interstate's interrogatories; and Thomas' response to Interstate's request to produce. The Commission objected, and the matter was taken with the case.

Generally, a party cannot supplement the record with evidence that was not before the administrative agency nor can the reviewing court go beyond the administrative agency's record. (*Jackson v. Department of Labor* (1988), 168 Ill. App. 3d 494, 523 N.E.2d 5; *Village of Western Springs v. Pollution Control Board* (1982), 107 Ill. App. 3d 864, 438 N.E.2d 458; see Official Reports Advance Sheet No. 26 (December 22, 1993) Rules 335(d), (i)(2), eff. February 1, 1994; 735 ILCS 5/3—110 (West Supp. 1993).) Interstate's answer to Thomas' charge was filed with the Department of Human Rights (see 775 ILCS 5/7A—102(A), (B) (West 1992) (formerly Ill. Rev. Stat. 1989, ch. 68, pars. 7A—102(A), (B))) and not with the Human Rights Commission. As Interstate did not seek to supplement the Commission's record with that document, it was not made a part of the Commission's record and cannot be considered by this court on appeal.

Interstate also is barred from supplementing the record on appeal with Thomas' answers to interrogatories and his response to a request to produce prepared during proceedings before the Commission. In accordance with section 5300.725 of the Illinois Administrative Code (56 Ill. Adm. Code § 5300.725 (1992)), discovery materials and documents are not filed with the Commission. They do not become a part of the Commission's record unless the party seeks to include those documents by motion made to the Commission. As Interstate did not file such a motion with the Commission, it is barred from supplementing the record on appeal with those documents as well.

Moreover, even if we were to allow Interstate's motion to supplement the record, we do not believe that the documents in question would require a reversal on the issue of sanctions. See *infra* footnote 5, which appears in the nonpublished portion of this opinion.

[2]In order to comply with appellate court page limitations specified by revised Supreme Court Rule 23, discussion of the issues relating to the Commission's award to Brandy and the Commission's denial of Interstate's motions for sanctions against Brandy and Thomas has been designated nonpub-

At the hearing before the ALJ, Brandy introduced evidence to show that an employee (John Burgess, Jr.) having the same job functions but of a different race was treated more favorably; that there were problems with Burgess' work performance; that Brandy's supervisor used language and invectives reflecting racial bias; and that the reasons given by Interstate for Brandy's layoff were pretextual. Interstate contended that Brandy was laid off because of his job performance, his inability to drive a truck and a decrease in work orders.

Interstate Material Corporation is an African-American, minority-owned ready-mix concrete supplier. In May 1986, three white males and Donald Brandy and William Thomas, who are African-Americans, were hired to work for Interstate by John Weaver, a white male, who worked as a supervising consultant to Interstate. Brandy and Thomas had previously worked as concrete finishers for Ebony Construction Company, a concrete placement and finishing company that shared common owners with Interstate. Two weeks later, Weaver hired two more white employees, one of whom was Norman Burgess, Jr. Ronald Siwinski, a white male, was the plant superintendent and immediate supervisor of Brandy, Thomas and Burgess. Siwinski reported to Weaver, who reported to Renee Bradford, Interstate's vice-president and chief operating officer. Bradford, as well as Interstate's president/owner, is African-American.

According to Brandy, when he was hired, Weaver told him he did not know what Brandy would be doing, but that he would be working in the yard. Siwinski put Brandy and Thomas to work as "troubleshooters" in the "pit." They ran gravel and sand up into the plant by a conveyor belt and cleaned the trucks and yard of concrete when necessary. After the first week, Brandy was trained to run the conveyor belt. When Burgess began work at Interstate, Brandy was in charge of the "pit" and Siwinski assigned Burgess to assist Brandy. Siwinski often gave Burgess direct instructions as to what he was to do. Two days after Burgess was hired, he was put in charge of the conveyor belt and "pit."

With respect to Burgess' work performance, Brandy testified that on one occasion, while he was working with Burgess, Burgess opened a chute after Brandy had already opened one. Siwinski had put Burgess in charge of the conveyor belt although Brandy did not know this at that time. According to Brandy, when a chute is opened, raw

lishable. The entire unabridged decision is contained in the full opinion of *Interstate Material Corp. v. Illinois Human Rights Comm'n*, Docket No. 1—93—0920.

material falls onto the conveyor belt and is sent up for mixing in the cement production process. On the day in question, the weight from the additional materials caused the conveyor belt to separate in two parts, and work ceased until the belt was repaired. It took one day to shovel and clean up the sand that had fallen on the ground and in the tunnel.

Brandy also testified that on May 28, 1986, four days after Burgess had been hired, the pit crew, consisting of Burgess, Brandy and Thomas, was assigned to put some gravel into a new pit for a City of Chicago cement order. Brandy and Thomas told Burgess that there was contaminated material in the pit and that it should not be used for that order. Burgess disregarded their warning and told them to run the gravel into the pit. Shortly thereafter, a City of Chicago inspector saw the contamination and caused the pit to be shut down.

Henry Little, a former mechanic at Interstate, testified that, in June or July 1989, Burgess overloaded an end loader with gravel causing a hose in the engine of the vehicle to break. The vehicle could not be used until the hose was replaced. Little testified that Burgess was verbally reprimanded by Weaver.

After the contamination incident, Siwinski told Brandy and Thomas not to come back to work for a day or two because the plant would be shut down until the contaminated material was cleaned up. Burgess was not laid off. Brandy and Thomas were never called back to work at Interstate.

In further support of his racial discrimination claim, Brandy presented evidence of racial bias on the part of Siwinski. Three witnesses, Henry Little, Clifford Braxton, a former mechanic at Interstate who was supervised by Siwinski, and Michael Thomas, who worked in various capacities under Weaver and Siwinski from October 1986 to August 1989, a time period after which Brandy had been laid off, testified that on many occasions they heard Siwinski refer to African-American employees as "you people" while referring to the white employees by name. In addition to hearing Siwinski use the phrase "you people," Braxton also testified that in March 1989 he overheard Siwinski refer to African-American employees as "niggers," stating "those niggers in the plant don't know nothing. They are dumb. *** [W]hat I am, going to do is I am going to fire all of them and hire me a new crew."

During Interstate's case, Siwinski testified that Brandy was hired as a driver-trainee and that he had informed Brandy that Brandy would be taught how to drive a ready-mix truck and would perform other functions within the company. Siwinski stated that Brandy's inability to drive a ready-mix truck at the time he was hired did not

present a problem because Siwinski had taught others how to drive while on the job and intended to teach Brandy as well.

With respect to Brandy's work performance, Siwinski testified that on "several occasions" he saw Brandy and Thomas leaning on their shovels and that a couple of times he "approached them" and told them "[t]here's no time to lean on shovels." He said that on one occasion he walked over to Brandy and Thomas and that "they never even made an effort to even seem like they were going to do anything." When asked how many occasions he observed this type of conduct, Siwinski stated "at least two or three times" although, on cross-examination, he stated the number was "exactly four times *** three, four times." Siwinski also stated that he attempted to teach Brandy how to drive a ready-mix truck. He considered Brandy to be a "washout" because Brandy could not shift gears. Siwinski stated that he discussed Brandy's driving ability with Weaver about three times and that he discussed Brandy's work habits with Weaver about three or four times. He testified that he did not have any discussions with Bradford about Brandy.

According to Siwinski, Weaver made the decision to lay off Brandy and Thomas. This decision was based upon Siwinksi's recommendations and was accepted by Renee Bradford, Interstate's vice-president. As to the reasons Brandy and Thomas were let go, Siwinski first testified that he believed Brandy and Thomas were let go because of a lack of work due to a large decline in orders. He stated that Brandy was not let go because of his driving ability. On further questioning, Siwinski stated that he did not know why Weaver laid off Brandy and then stated that he believed Brandy was laid off because of his work habits.

With respect to Burgess' work performance, Siwinski testified that Burgess was not at fault for the contamination incident because Burgess had been instructed by John Weaver to mix the wrong material in the pit. Siwinski also stated that Burgess did not overload the end loader because the end loader was designed so that it could not be loaded beyond its carrying capacity. He further stated that the end loader was very old and that its hoses broke frequently and resulted in daily repair orders. It was Siwinski's opinion that the hose broke because of fatigue and that the amount of the load did not cause the hose to break.

Siwinski also testified that he never used the word "nigger," but admitted that he frequently used the phrase "you people." He testified that he used that phrase to refer to whomever he was speaking to, including his family, and that it had no derogatory meaning to him.

Based on the evidence summarized above, the ALJ issued an interim recommended order and decision finding that the preponderance of the evidence sustained Brandy's complaint of race discrimination. After hearing oral argument, the Human Rights Commission affirmed the ALJ's recommended order holding that there was evidence in the record, based on credible witness testimony, from which the ALJ could find:

> "(1) that the reasons given by Interstate for laying off Brandy were untrue, (2) that a similarly situated white individual had a much poorer work record, but was retained, and (3) that the individual responsible for recommending the complainant's termination had used racist language with respect to [African-American] employees."

■ Employment discrimination actions brought under the Illinois Human Rights Act are to be analyzed in accordance with the framework set forth by United States Supreme Court decisions reviewing claims brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (1982)) and the Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.* (1982)). (*Zaderaka v. Human Rights Comm'n* (1989), 131 Ill. 2d 172, 545 N.E.2d 684; *ISS International Service System, Inc. v. Human Rights Comm'n* (1995), 272 Ill. App. 3d 969, 976.) That three-part analysis, set out in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817, was explained in *Zaderaka* as follows:

> "First, plaintiff must establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. If a *prima facie* case is established, a rebuttable presumption arises that the employer unlawfully discriminated against plaintiff. Second, to rebut the presumption, the employer must articulate, not prove (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 259-60, 67 L. Ed. 2d 207, 219, 101 S. Ct. 1089, 1097), a legitimate, nondiscriminatory reason for its decision.
>
> Finally, if the employer carries its burden of production, the presumption of unlawful discrimination falls and plaintiff must then prove by a preponderance of the evidence that the employer's articulated reason was not its true reason, but was instead a pretext for unlawful discrimination. This merges with the plaintiff's ultimate burden of persuading the trier of fact that the employer unlawfully discriminated against plaintiff. [Citation.] This ultimate burden remains at all times with plaintiff. [Citation.]" *Zaderaka*, 131 Ill. 2d at 178-79, 545 N.E.2d at 687.

■ Employment discrimination may be established by showing disparate treatment and disparate impact. (*Valley Mould & Iron Co. v. Illinois Human Rights Comm'n* (1985), 133 Ill. App. 3d 273, 478

N.E.2d 449.) The former theory requires proof that the employer simply treated some people less favorably than others because of their race, color, religion, sex, or national origin. The latter theory involves proof of employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. (*International Brotherhood of Teamsters v. United States* (1977), 431 U.S. 324, 335 n.15, 52 L. Ed. 2d 396, 415 n.15, 97 S. Ct. 1843, 1854-55 n.15.) Proof of discriminatory motive is required under the disparate treatment theory but not the disparate impact theory and may be inferred in some cases from the mere fact of differences in treatment. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 52 L. Ed. 2d 396, 97 S. Ct. 1843; *Burnham City Hospital v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635.

■ *Prima facie* proof of discrimination in work force reduction cases, based upon disparate treatment, can be established upon a showing by the complainant that (1) he was within the protected class; (2) he was performing according to his employer's legitimate expectations; (3) he was terminated or demoted; and (4) others not in the protected class were treated more favorably. (*Clyde v. Human Rights Comm'n* (1990), 206 Ill. App. 3d 283, 292, 564 N.E.2d 265, citing *Oxman v. WLS-TV* (7th Cir. 1988), 846 F.2d 448.) Once a *prima facie* case of discrimination has been established and the employer has articulated a legitimate reason for its actions, the complainant must show that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. (*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089; *Burnham City Hospital v. Human Rights Comm'n*, 126 Ill. App. 3d 999, 467 N.E.2d 635; see *Clyde v. Human Rights Comm'n*, 206 Ill. App. 3d 283, 564 N.E.2d 265.) It then becomes a question of fact as to which party's explanation of the employer's motivation is the more credible. *United States Postal Service Board of Governors v. Aikens* (1983), 460 U.S. 711, 716, 75 L. Ed. 2d 403, 411, 103 S. Ct. 1478, 1482; *Burnham City Hospital v. Human Rights Comm'n*, 126 Ill. App. 3d 999, 467 N.E.2d 635.

Findings of fact by the Human Rights Commission "shall be sustained [on judicial review from final orders] unless the court determines that such findings are contrary to the manifest weight of the evidence." (775 ILCS 5/8—111(A)(2) (West Supp. 1993).) A decision is contrary to the manifest weight of the evidence only when, after reviewing the evidence in a light most favorable to the administrative agency, the court determines that no rational trier of fact

could have agreed with the agency's decision because an opposite conclusion is clearly warranted. (*E.g., Bultas v. Board of Fire & Police Commissioners* (1988), 171 Ill. App. 3d 189, 524 N.E.2d 1172.) The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. If the record contains any evidence supporting the administrative agency's decision, the decision must be affirmed. *Obasi v. Department of Professional Regulation* (1994), 266 Ill. App. 3d 693, 698, 639 N.E.2d 1318, citing *Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 606 N.E.2d 1111.

■ In the instant case Brandy claimed racial discrimination based on disparate treatment. He established a *prima facie* case with proof that he was within the protected class of African-Americans; that he was performing the laborer tasks he had been hired to do; that he was laid off; and that Burgess, a similarly situated employee who performed the same job functions Brandy performed and who was not within the protected class, was not laid off. (See *Village of Bellwood Board of Fire & Police Commissioners v. Human Rights Comm'n* (1989), 184 Ill. App. 3d 339, 541 N.E.2d 1248 (*prima facie* case of racially motivated discharge established by evidence that complainant was member of a protected class who was disciplined in a harsher manner than comparably situated persons of a different race); see also *Clyde v. Human Rights Comm'n*, 126 Ill. App. 3d 283, 564 N.E.2d 265.) Interstate rebutted the presumption of discrimination by articulating several reasons for its decision to lay off Brandy; namely, poor work habits, inability to drive a ready-mix truck and decrease in work orders. It then became incumbent upon Brandy to show that Interstate intentionally discriminated by direct proof of racial motivation or by indirect proof that Interstate's proffered explanation was not credible. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089; *Burnham City Hospital v. Human Rights Comm'n*, 126 Ill. App. 3d 999, 467 N.E.2d 635.

■ On appeal Interstate argues that Brandy did not prove racial motivation or animus as a matter of law because the comments attributed to Siwinski, even if made,[3] were sporadic, accidental and merely part of casual conversation. Interstate relies on *Village of*

---

[3] The ALJ weighed the conflicting testimony, determined that Siwinski made the alleged comments, and rejected Siwinski's attempt to negate the racial overtones to those comments. As there is evidence to support these factual findings, we are bound by them. 775 ILCS 5/8—111(A)(2) (West Supp.

*Bellwood Board of Fire & Police Commissioners v. Human Rights Comm'n* (1989), 184 Ill. App. 3d 339, 541 N.E.2d 1248, and two Federal cases cited therein, *Johnson v. Bunny Bread Co.* (8th Cir. 1981), 646 F.2d 1250, and *Equal Employment Opportunity Comm'n v. Murphy Motor Freight Lines, Inc.* (D. Minn. 1980), 488 F. Supp. 381.

The comments made by Siwinski could be considered by the ALJ and the Commission as evidence of Siwinski's state of mind and the motivation for Siwinski's reports to Weaver which served as the basis for Brandy's layoff. Whether those comments alone would have sustained Brandy's ultimate burden of showing unlawful discrimination is a question we need not decide (see *Village of Bellwood Board of Fire & Police Commissioners v. Human Rights Comm'n*, 184 Ill. App. 3d 339, 541 N.E.2d 1248 (sporadic racial slurs insufficient evidence of racial harassment); *cf. Shager v. Upjohn Co.* (7th Cir. 1990), 913 F.2d 398 (slur in and of itself not sufficient evidence of discrimination but is relevant evidence of discrimination with greater or lesser probative value depending on precise character of remark)), since additional proof of racial motivation was offered by Brandy in the form of Burgess' inadequate work performance. The ALJ concluded that Burgess' work performance was "problematic" and inferior to Brandy's; and while we might not agree with that finding, we must give deference to it. The difference in treatment accorded to Burgess and Brandy, where Burgess was retained and Brandy was laid off, especially where their job performances were unequal, supports an inference of discriminatory motive. (See *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 52 L. Ed. 2d 396, 97 S. Ct. 1843; *Burnham City Hospital v. Human Rights Comm'n*, 126 Ill. App. 3d 999, 467 N.E.2d 635 (discriminatory motive may be inferred from mere fact of differences in treatment).) Furthermore, in addition to presenting proof of racial motive, Brandy presented evidence that discredited the reasons articulated by Interstate for Brandy's layoff.

The record shows that Siwinski gave three reasons for Brandy's layoff. He testified that he observed Brandy leaning on his shovel; that Brandy was required to drive a ready-mix truck but was not able to learn that skill; and that the company experienced a large decrease in orders for cement. It then became a question of fact as to which party's explanation of the employer's motivation was the more credible. (*United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 75 L. Ed. 2d 403, 103 S. Ct. 1478; *Burnham City Hospital v. Human Rights Comm'n*, 126 Ill. App. 3d 999, 467 N.E.2d 635.) The

1993); see *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 639 N.E.2d 1318.

ALJ found Siwinski's testimony to be inconsistent as to which of these reasons was the determinative factor. The ALJ rejected Interstate's evidence that Brandy was hired to be a truck driver and found that Brandy was hired as a laborer. The ALJ found that Brandy's inability to drive a ready-mix truck was inconsequential to his continued employment. The ALJ also rejected Interstate's evidence that Brandy's job performance was the reason for his layoff. The ALJ found Siwinski's testimony inconsistent as to the number of times he saw Brandy lean on his shovel and concluded that the vagueness in Siwinski's answers gave the "impression" that Siwinski "probably did not intend for them [his observations of Brandy] to become the basis for Complainant's termination." The ALJ also opined that, even assuming Siwinski's testimony was accepted, complainant's job of shovelling sand would require him to pause for brief moments to rest and could not have been proof of poor work performance. Finally, the ALJ concluded that there was no large decline in work orders or in the amount of concrete delivered by Interstate as compared to the time prior to Brandy's layoff. Based upon these credibility determinations and a weighing of the evidence, the ALJ found Interstate's proffered reasons to be pretextual and further found that Brandy had set forth sufficient proof that Interstate's layoff decision was racially motivated and that that decision amounted to racial discrimination in violation of the Human Rights Act.

Interstate also attempts to defeat Brandy's contentions of racial motivation or animus by relying on the fact that it is a minority-owned company with a stated purpose of "enabl[ing African-Americans] to participate in the ready-mix industry." This fact is not dispositive, however. (Cf. Castaneda v. Partida (1977), 430 U.S. 482, 499, 51 L. Ed. 2d 498, 513, 97 S. Ct. 1272, 1282 (court stated "[b]ecause of the many facets of human motivation, it would unwise to presume as a matter of law that human beings of one definable group would not discriminate against other members of their group"); Eccleston v. Secretary of Navy (D.D.C. 1988), 700 F. Supp. 67, 69 (African-American supervisor discriminated against African-American employee by promoting white employee; court stated "[t]here is no question that a[n African-American] may consciously or unconsciously discriminate against another black and be liable under Title VII").) In this context, Interstate also indirectly raises as error the ALJ's refusal to allow Interstate's attorney, who also was its owner and president, to testify concerning his state of mind and Interstate's history regarding racial discrimination. While we have no reason to doubt the owner's sincerity and lack of racial animus or bias, his intentions or state of mind would not be dispositive of the facts of

this case since he did not purport to have involvement in the decision to lay off Brandy. Moreover, even if the owner had participated in the layoff decision, as in fact the African-American vice-president had done, such participation, even if itself devoid of racial animus, would not insulate Interstate from liability where that participation merely adopted the recommendation of a racially motivated or biased supervisory employee. See *Shager v. Upjohn Co.* (7th Cir. 1990), 913 F.2d 398 (Title VII age discrimination case reversing summary judgment to employer; court held company can be liable where personnel committee acted as conduit for supervisory manager's prejudice and discriminatory actions).

The ALJ and the Commission found Brandy's evidence more credible and determined that Brandy had proved racial discrimination by a preponderance of the evidence. While the evidence does not overwhelmingly compel such an ultimate finding, that is not the standard for review. It is not our function to retry the case or to second-guess the Commission. If there is any evidence to support the Commission's findings and decision, it must be affirmed. Here, while there is some evidence to support a contrary decision, there also is sufficient evidence to support the Commission's decision. Thus, it is not against the manifest weight of the evidence, and we must affirm.

For the foregoing reasons, the order and decision of the Human Rights Commission is affirmed.

Affirmed.

COUSINS, P.J., and McNULTY, J., concur.