COOK COUNTY MASONIC TEMPLE ASSOCIATION *et al.*, Plaintiffs-Appellees, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (4th Division)    No. 81-1017

Opinion filed February 25, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellant.

Flanagan, Bilton & Brannigan, of Chicago (Thomas E. Brannigan, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Cook County Masonic Temple Association, is an unincorporated association that acts as the representative of all the individual Masonic Temple organizations in Cook County. The other 33 plaintiffs

are the individual Masonic Temple organizations that are members of the Cook County Masonic Temple Association. These 33 plaintiffs each own the sites on which their respective temples are built.

The issue in this case is whether the properties with the temples on them were used for charitable purposes and were therefore exempt from real estate taxation in 1978 under the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 500.7). Defendant, the Department of Revenue, determined that the properties were not exempt. On review under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), the circuit court of Cook County reversed the Department's finding and held that the properties were exempt. The Department has appealed to this court.

We affirm.

BACKGROUND

The corporate charter of each Masonic Temple organization states that the primary purpose of the organization is to promote and conduct charitable, educational, and religious activities. The Masonic Temple Association maintains several charitable organizations in Illinois, among which are the Illinois Masonic Home for the Aged, the Illinois Masonic Medical Center, the Illinois Masonic Children's Home, and the Illinois Masonic Nurses Training Scholarship Foundation. The exempt status of the properties on which the Masons provide their charitable services, such as the Home for the Aged or the Children's Home, is not in question here. It is undisputed that the Masons raise and spend millions of dollars each year to operate their charitable organizations.

Each temple is used for the periodic meetings of the individual organization that owns it. One important purpose of these meetings is to foster the high ideals and morals of Masonry. The first and last parts of these meetings are rituals having a religious tone. The meetings are often used to admit new members who have completed the three required stages of study in Masonry principles. Potential members are often tested to determine whether they have completed the studies for each stage leading to membership.

The most important business of each temple, discussed at each meeting, is the raising of money for charitable activities. The Masons not only support their own established charitable organizations but also respond to one-time requests for charitable contributions from other local, State, or national organizations.

Donations to support the Masons' charitable activities are often solicited at both official meetings and social functions held at the temples. The Masons have no other program, such as mail solicitation, to raise funds; 90 to 95% of the money which supports the Masons' charities is raised at the meetings and social functions in the temples.

Besides using the temples for meetings and fund raising, Masons also use the temples for educational activities involving the children of members. When not using it for Mason business, each organization allows civic and religious organizations to use its temple, usually without charge. None of the temples makes a profit, and no profit-seeking organization is allowed to use the temples.

Each member of a temple organization is assessed $15 to $20 a year in dues, one dollar of which is turned over to Grand Lodge Charity Fund, the statewide charity fund of the Masons; the rest is used to pay for the utilities and maintenance and, until the year at issue in this case, the real estate tax bills of the temple. Individual members are not expressly required to donate additional funds for charity, though they usually do so. Social functions at the temples are not specifically restricted to fund-raising events, but this is usually done also, since the chartered purpose of the organizations is to support charitable activities.

Besides these activities, at the time this case was heard each temple was occasionally used as a center for blood donations, part of a new nationwide Masonic program. At the time of the hearing, only Masons and their immediate families were covered by the blood donations; however, the Masons' goal is to expand the program so that every person in the country can be covered.

Based on the foregoing undisputed facts, the Department of Revenue determined that the temple properties were not exempt from real estate taxes. The circuit court of Cook County reversed and determined that the properties were exempt.

OPINION

I

■■ The issue before us is not whether the Department's decision was against the manifest weight of the evidence. When the facts upon which a decision of tax exempt status rests are undisputed, whether property is exempt is a question of law. *Illinois Central Gulf R.R. Co. v. The Department of Local Government Affairs* (1981), 101 Ill. App. 3d 414; see *Caterpillar Tractor Co. v. Department of Revenue* (1963), 29 Ill. 2d 564, 194 N.E.2d 257.

Under section 19.7 of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 500.7), to qualify for the charitable exemption, property must be owned by a charitable organization and must be used exclusively for charitable purposes. (*Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 134 N.E.2d 292.) The parties agree that the properties in question were owned by charitable organizations within the meaning of the statute. The charter of each Masonic organization states that its primary purpose and activity is to do charitable works.

■■ The dispute in this case involves whether the temples were used exclusively for charitable purposes. "Exclusively used" has been held to mean that the primary use of the property must be charitable. Though the property has other incidental uses, it will still qualify for the exemption as long as those uses are not for profitable purposes. *People ex rel. Nordlund v. Association of the Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 237 N.E.2d 533.

The Department argues that the primary use of the temples was to provide a meeting place for the Masons to carry on the ideals and morals of Masonry, which is not a charitable purpose. Plaintiffs argue that the temples were primarily used to raise funds for the Masons' charitable activities, and all other uses were incidental. We agree with the Masons.

The Department's argument depends on the interpretation of three Illinois Supreme Court cases decided in February and April 1932. The first case was *People ex rel. Nelson v. Rockford Masonic Temple Building Association* (1932), 348 Ill. 567, 181 N.E. 428, which also involved the exempt status of property with a Masonic Temple on it owned by a Masonic lodge organization. Under that organization's charter, its primary purpose was not to promote and do charitable works but to provide for the " 'mutual benefit and social intercourse of its members,' " and to carry on the ideals and morals of Masonry. (348 Ill. 567, 569, 181 N.E. 428, 429.) Because of its charter, the organization was found to have charity as an incidental purpose only. As a result, the court found the temple was not owned by a charitable organization and thus failed to meet the first requirement for the exemption.

The court in *Rockford Masonic Temple Building Association* also found that the property was not used primarily for charitable purposes. The evidence showed only that the temple was used as a meeting place where the members could carry on the ideals and standards of Masonry, and as a club for social and fraternal purposes. No evidence that indicated the temple was used to raise money for charity was presented.

The second decision, *People ex rel. Nelson v. Rockford Lodge No. 64* (1932), 348 Ill. 528, 181 N.E. 432, involved a lodge owned by a local order of Elks. The Elks' charter stated that the order was organized to promote " 'the mutual benefit and social intercourse' " of its members, and not for charitable purposes. (348 Ill. 528, 533, 181 N.E. 432, 433.) As a result, the local order of Elks was also found not to be a charitable organization, and thus it failed to meet the first requirement for the charitable exemption.

The court in *Rockford Lodge No. 64* also found that the property was not used primarily for charitable purposes. The evidence showed that the building was not used for profit and was often used rent-free by other charitable organizations. However, the evidence showed that the lodge's bowling alleys, locker rooms, dining room, pool tables, and cigar and

candy stands were used daily for the convenience and entertainment of its members. Thus, the court found that the primary use of the lodge was not charitable.

The third case, *People ex rel. Thompson v. Dixon Masonic Building Association* (1932), 348 Ill. 593, 181 N.E. 434, involved a Masonic Temple. The charter of the local Masonic organization that owned the temple was not in evidence, and the court did not reach the issue of whether the local organization was a charitable organization.

The court found that the property was not used primarily for charitable purposes. The evidence showed that the temple, although used as a meeting place for the members to carry on the principles of Masonry, also had a library and a club room used for playing cards and billiards. Other organizations often used the temple for banquets and social functions. No evidence showing the temple was used to raise funds for charity was presented.

The facts in the present case are easily distinguishable from the three supreme court decisions. To begin with, each of the organizations in this case has a charter that shows the organization is primarily charitable and not fraternal. There is no question, therefore, that the owners of the property were charitable organizations. The meetings referred to in this case, although held to foster the principles of Masonry, were meetings of organizations which are primarily charitable and not primarily fraternal. There is no indication in this case that the temples have bowling alleys, pool tables, or other facilities for entertainment of the members. The record shows that the primary function of the temples is to bring members and others together for the purpose of raising funds for the Masons' charitable works. At least 90% of all money spent by the Masons for charity is raised through the meetings and functions held at the temples. The Masons have no other way to solicit funds for charity besides use of the temples. Obviously, the raising of money for charity is a charitable work. Besides raising funds, other charitable activities such as blood donations are carried on in the temples.

■■ We believe that the evidence in this record supports the circuit court's finding that the temples were used primarily for charitable purposes and that the other uses were incidental to this primary function of the local organizations. Thus, the circuit court correctly found the temple properties to be exempt from real estate taxation.

## II

The Department also contends that the decision of the circuit court should be reversed and remanded because each plaintiff temple organization did not present specific evidence to show that its particular temple

property was exempt. The Department contends the case should be remanded to take such evidence.

■■ It is true that specific evidence about each temple was not presented. However, it is undisputed that the organization and operation of the temples are basically the same. At the Department proceedings witnesses were permitted to testify about their specific temples in the belief that the evidence was being presented to show how all the temples operated. Many of the witnesses belonged to numerous temple organizations. The Department acquiesced in the conduct of the proceedings. Now, the Department is arguing in essence that the proceedings it allowed were improper. Obviously, the proceedings were conducted as they were to prevent waste of time and money to both the plaintiffs and the Department. Evidence about each temple would have been repetitious. We believe that any issue concerning the absence of specific facts about each temple was waived by the Department by allowing the proceedings before it to be conducted as they were.

Accordingly, for the reasons noted, we affirm the decision of the trial court.

Affirmed.

JOHNSON, P. J., and JIGANTI, J., concur.