PONTIAC LODGE No. 294, A.F. AND A.M., Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Fourth District   No. 4—92—0608

Opinion filed March 30, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General (argued), of Chicago, of counsel), for appellant.

Curtis W. Myers (argued), of Myers Law Firm, of Pontiac, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On February 14, 1984, the Livingston County Board of Review sent to defendant Illinois Department of Revenue (Department) a "Certification of Exemption Request" indicating it had approved the request of plaintiff Pontiac Lodge No. 294, A.F. & A.M. (Pontiac Lodge), in application for a property tax exemption for the property owned by Pontiac Lodge and used as its lodge hall. On August 3, 1984, the Department denied the exemption. On February 27, 1985, the Department reaffirmed its denial. Pontiac Lodge then requested and received a hearing before an administrative law judge (ALJ) who recommended denial of the request. On March 18, 1986, the final administrative decision denying the exemption was made. Pontiac Lodge took administrative review to the circuit court of Livingston County. On June 25, 1992, the circuit court reversed the administrative decision and ordered the exemption be issued.

The Department has appealed contending (1) the circuit court lacked jurisdiction in administrative review; (2) the circuit court's decision was contrary to the law; and (3) the circuit court abused its discretion when it dismissed the complaint and then vacated that dismissal. We hold that the circuit court had jurisdiction and did not abuse its discretion in vacating its previous dismissal of the complaint. However, we agree with the Department that the decision of the cir-

cuit court declaring the property exempt was contrary to the law. Accordingly, we reverse.

■■ Section 138 of the Revenue Act of 1939 (Revenue Act) provides that the "Administrative Review Law *** shall apply to and govern all proceedings for the judicial review of final administrative decisions of the Department hereunder." (Ill. Rev. Stat. 1991, ch. 120, par. 619.) Section 3—107(a) of the Administrative Review Law provides that "in any action to review any final decision of an administrative agency, the *administrative agency* and all persons, other than the plaintiff, *who were parties of record to the proceedings before the administrative agency shall be made defendants.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 110, par. 3—107(a).

■■ The decision from which administrative review was taken was a recommended decision of an ALJ signed by the ALJ with an approval by the Director of the Department endorsed thereon. The apparent argument of the Department is that its Director and not the Department was the "agency" from which judicial review is sought and was required to be made a party. Failure to name all necessary parties to a complaint for judicial review of an administrative decision deprives the circuit court of jurisdiction to proceed. (*Lockett v. Chicago Police Board* (1990), 133 Ill. 2d 349, 549 N.E.2d 1266.) However, section 137 of the Act (Ill. Rev. Stat. 1991, ch. 120, par. 618) makes clear that the agency reviewing property exemption decisions by county boards of review is the Department. Section 138 of the Act under which this judicial review was brought speaks in terms of review of decisions of the Department.

Section 4 of the Civil Administrative Code of Illinois, which provides that a department director "execute the powers and discharge the duties vested by law in his respective department" (Ill. Rev. Stat. 1991, ch. 127, par. 4), merely gives the director the power to act as agent of the agency. Here, the Director was acting in this capacity in approving the recommendations of the ALJ.

The Department relies upon the decision in *Lockett*, where a police superintendent who had filed disciplinary charges against an officer with a police board was not made a party to a proceeding for judicial review of the board ruling. The supreme court held that the circuit court lacked jurisdiction because the police superintendent, who became a party by filing the charges and appearing in support of them, was not a party to the judicial review. Here, the Director was never a party to the proceedings before the Department. *Strang v. Department of Transportation* (1990), 206 Ill. App. 3d 368, 564 N.E.2d 261, also cited by the Department, concerns the necessity of

making those who have been parties to administrative proceedings parties to the judicial review.

██ Having decided that the circuit court had jurisdiction, we now also determine that it was acting within its discretion when it vacated its prior order of dismissal. The circumstances surrounding this dispute began with the filing in the circuit court, by the Department, of a motion for Pontiac Lodge to specify the errors by the Department upon which it was relying. This motion was filed on May 16, 1986, 25 days after the complaint was filed. Approximately two years later, the Department had the motion set for a hearing on April 20, 1988. The docket indicated no one appeared for Pontiac Lodge on that date, and the motion was allowed with Pontiac Lodge ordered to file a specification of errors within 14 days under penalty of dismissal of suit upon its failure to do so. A docket entry of May 31, 1988, indicated Pontiac Lodge was given an extension until June 14, 1988.

The circuit court docket further showed an entry of June 14, 1988, purporting to dismiss the administrative review. However, the entry was scratched out, and a handwritten entry indicated the order of dismissal was vacated because Pontiac Lodge had made a sufficient filing on June 14, 1988. The record indicated both sides had been dilatory before the circuit court. Even when the pleading involved is a criminal complaint, the circuit court has reasonable discretion in determining whether to reinstate such a complaint after it has been dismissed for want of prosecution. (*People v. Brown* (1968), 39 Ill. 2d 307, 311, 235 N.E.2d 562, 565.) That discretion was not breached here.

We now turn to the merits of the decision on appeal. Section 6 of article IX of the Illinois Constitution of 1970 provides:

"The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes." (Ill. Const. 1970, art. IX, §6.)

Section 19.7 of the Revenue Act defines property eligible for charitable tax-exempt status as follows:

"All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States, *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit." Ill. Rev. Stat. 1991, ch. 120, par. 500.7.

■ Pursuant to section 19.7 of the Revenue Act the taxpayer must establish, in order to qualify for a charitable property tax exemption, that the property is owned by a charitable organization and is exclusively used for charitable purposes. (*Resurrection Lutheran Church v. Department of Revenue* (1991), 212 Ill. App. 3d 964, 970, 571 N.E.2d 989, 993.) "[T]he term 'exclusively used' means the primary purpose for which property is used and not any secondary or incidental purpose." *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 157, 233 N.E.2d 537, 542.

The undisputed evidence showed that Pontiac Lodge is a not-for-profit Masonic organization, and it is part of the Masonic Grand Lodge of the State of Illinois. Masonic organizations teach principles of "brotherly love, relief, truth, temperance, fortitude, prudence, and justice." In addition, Pontiac Lodge supports various charities. The Pontiac Lodge property was purchased in 1931 by the Masonic Temple Association, a not-for-profit holding organization, and title to the property was later transferred to Pontiac Lodge.

The Pontiac Lodge property consists of a two-floor building with a basement where Pontiac Lodge and other subordinate Masonic organizations hold their meetings. An annual charitable function is held at the Pontiac Lodge property, and in addition, the building stores crutches, wheelchairs, and walkers, which are loaned free of charge to any member of the community in need. The Pontiac Lodge property was being used by only Masonic organizations because other charitable or religious organizations had allegedly been destructive in the past.

Masonic organizations subordinate to Pontiac Lodge also use the Pontiac Lodge building, including the Eastern Star No. 310, White Shrine No. 29, Royal Arch Masons, Pontiac Commandery No. 85 and a chapter of the order of DeMolay. The subordinate Masonic organizations make contributions to Pontiac Lodge for the use of the building.

The basic function of the Pontiac Lodge property is to provide a place for the Masonic organizations to hold meetings, which are fraternal and social in nature. Various charitable programs are derived from the meetings, including preparing Christmas baskets for the poor, and an annual miniclinic for the Shrine hospital organization. In addition, the Pontiac Lodge provides monetary help to needy people in the community through the use of a "Master's fund," which relieves some of the burden from the local government to provide public aid. Occasionally, the local government would ask the Pontiac Lodge to assist a needy person in the community. Handicap equipment pur-

chased from the "Master's fund" is stored at the Pontiac Lodge property and is loaned to people in the community.

Pontiac Lodge's income for the fiscal year 1983-84 was $10,264 and its expenses were $13,067. Its statement indicates that 38% of the funds came from investments, 15% of the funds came from donations for the use of the Pontiac Lodge building, and 1% of the funds came from contributions. Pontiac Lodge's charitable donations amounted to 12% of its expenses. That percentage of charitable donations includes both the mandatory charity assessment by the Grand Lodge in the form of a per capita tax, and local charitable donations.

A per capita tax is assessed to each member of Pontiac Lodge by the State organization or national organization to which it belongs, here the Masonic Grand Lodge of the State of Illinois, as part of the member's dues. The per capita tax is paid to the State organization and is then divided between a general fund and a charity fund. The State organization supports various charities, including a general assistance fund, scholarship funds, the Masonic Service Association (which provides a hospital visitation program to all the veterans' hospitals and provides supplies to those patients), the Illinois Masonic children's home and Illinois Masonic shelter home and nursing home facility. The Pontiac Lodge building is also used by subordinate Masonic organizations which support charities and pay a per capita tax to the State Masonic organization.

The ALJ whose recommendation was adopted by the Department explained his findings as follows:

"I find that [Pontiac Lodge] was organized to promote the general fraternal welfare of the members of [Pontiac Lodge] and the related Masonic organizations, which used the building, and to provide and maintain a suitable place for them to hold regular lodge meetings and for other social purposes. I further find that [Pontiac Lodge's] Articles of Incorporation indicate it was organized primarily for fraternal and social purposes, and only incidentally, for charitable purposes. In addition, I find that with the exception of the one day mini-clinic, no charitable activity was conducted on the property here in issue, by Pontiac Lodge or the other Masonic organizations using the building, during the calendar year.

In conclusion, I find as a matter of fact, that [Pontiac Lodge] was not primarily a charitable organization, and did not use the parcel here in issue for primarily charitable purposes during 1983."

The circuit court viewed the matter in a different light, stating:

"Interwoven in every aspect of the goals for the Masons are concern for fellow man and charitable work with no limitations regarding race, color, creed, or membership of the organization.

8. The Administrative Law Judge apparently looked at the financial strength of the local Masonic Chapter—its 'financial muscle,' and because very limited fund raising activities were conducted by the Pontiac Masonic Temple, *in its building* that therefore somehow the building should not be exempt for real estate tax purposes. Yet the testimony in this case overwhelmingly establishes that while there are certain fraternal and religious aspects of Masonry, that the clear focus of all efforts is to contribute dues and other funds generated locally to both local organizations and to a large number of Masonic charitable organizations. No solicitation is made of the general public for funds to support its charitable activities, and all such funds come from membership and private donations. Even a cursory review of the Pontiac Mason budget, shows that it is a 'barebones' budget with earmarked charitable donations of $427.00 made in 1983. What the Administrative Law Judge chose to disregard from the testimony, is the fact that the annual 'per capita to Grand Lodge' of $1,115.00 is also used for charitable purposes in large measure." (Emphasis in original.)

The circuit court concludes as follows:

"The test in Illinois is not whether a building owned by a not-for-profit corporation is physically the site of charitable fund raising activities, but whether the ability to meet in that facility, by its membership, which ultimately results in a significant contribution to a wide variety of charitable activities, is the criteria to determine whether the building qualifies for a real estate tax exemption. The testimony before the Administrative Law Judge in this case, clearly establishes that charity is not a 'incidental purpose' of the Pontiac Masonic Temple, but rather a primary focus. The limited monies generated by its membership for charitable purposes are significant in light of its modest budget, which clearly does not indicate that expenditures for fraternal activities predominate over charitable goals."

■ In considering the decisions of the Department and the circuit court, we must remember that, as in all administrative review, deference is given to facts found by the agency. (Ill. Rev. Stat. 1991, ch. 110, par. 3—110.) We give no deference to the determination of the circuit court when it sits in administrative review. Moreover, "[t]he burden of proving the right to exemption is upon the party seeking it,

and in determining whether property is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation." *Methodist Old Peoples Home*, 39 Ill. 2d at 155, 233 N.E.2d at 540.

The position of Pontiac Lodge and the circuit court that Masonic activity is necessarily charitable in nature finds support in *Most Worshipful Grand Lodge of Ancient Free & Accepted Masons v. Board of Review* (1917), 281 Ill. 480, 117 N.E. 1016. There, in upholding the exempt status of a Masonic lodge property, the court stated "[i]t has been quite uniformly held by the courts that the primary objects of a Masonic lodge being benevolence and charity, such a lodge is a charitable institution." (*Grand Lodge*, 281 Ill. at 483, 117 N.E. at 1017.) Similar reasoning was applied in *People ex rel. Wagner v. Freeport Masonic Temple, Inc.* (1931), 347 Ill. 180, 179 N.E. 672.

The theory of the inherent charitability of Masonry was rejected by the supreme court in *People ex rel. Nelson v. Rockford Masonic Temple Building Association* (1932), 348 Ill. 567, 181 N.E. 428, and *People ex rel. Thompson v. Dixon Masonic Building Association* (1932), 348 Ill. 593, 181 N.E. 434. In both cases, the buildings were owned by building associations with the buildings used by Masonic organizations. In *Rockford*, the supreme court reversed a judgment declaring the property exempt. In *Dixon*, the lower court had held it had no jurisdiction to determine exemption, and the supreme court elected to make that determination for itself and denied exemption. In *Rockford*, the court pointed out that the organizations using the building concentrated on all aspects of Masonry and that the charitable aspects were not dominate. In *Dixon*, the court made similar observations and pointed out that the building was sometimes used for service clubs, a chamber of commerce, and a bar association.

Most favorable to Pontiac Lodge among post mid-1930's cases is *Cook County Masonic Temple Association v. Department of Revenue* (1982), 104 Ill. App. 3d 658, 432 N.E.2d 1240. There, the Department had denied exemption to all Masonic Temple organizations in Cook County. Acting through their unincorporated association, they took administrative review to the circuit court, which reversed and granted exemption. The appellate court affirmed. The charter of each of the temples stated its primary purpose was "to promote and conduct charitable, educational, and religious activities" (*Cook County*, 104 Ill. App. 3d at 659, 432 N.E.2d at 1241). Raising money for charity was shown to be the most important business that took place at each meeting. The *Cook County* opinion indicated that between 90% and 95% of all funds raised were raised at meetings and social events and

no outside solicitation was done. Dues were $15 to $20 per year and $1 of that sum was applied to Masonic charities.

In *Cook County*, the parties agreed that the organizations were sufficiently charitable and that the issue was whether use of the property met that standard. Organizations for profit were not allowed to use the buildings, but some civil and religious groups did use the facilities. Each property was used as a center to collect donated blood. The court summed up its determinations by stating "that the evidence in this record supports the circuit court's *finding* that the temples were used primarily for charitable purposes." (Emphasis added.) (*Cook County*, 104 Ill. App. 3d at 662, 432 N.E.2d at 1244.) This would indicate that the appellate court was giving significance to the circuit court's view of the facts rather than that of the Department to which deference should have been given.

■■ Evidence was presented here that in addition to the holding of various Masonic group meetings, the building was used to furnish equipment for the handicapped, hold a Shrine clinic for children and collect blood donations. Pontiac Lodge maintained that 95% of the money it spent for charity was raised from meetings held within the building. No evidence was presented as to the source of any of this money, except for dues, less than one-fourth of which were used for charitable purposes. The contributions made did go for a wide variety of very desirable charitable activities. However, no evidence in any detail was presented that matters of charity dominated the meetings as was stated to be the case in *Cook County*. The Department could have properly concluded that the dominant aspect of the meetings was character building through application of all aspects of Masonry.

Unlike in *Dixon*, the evidence here showed that the building did not have game rooms for playing games and billiards, but the Department did determine that Pontiac Lodge had neither a purpose nor a use which was predominantly charitable. We need consider only the question of use. We conclude that Pontiac Lodge, which had the burden of showing a predominantly charitable use of the property, failed to produce sufficient evidence in that regard to make the Department's finding wrong as a matter of law. Accordingly, we reverse the decision of the circuit court and affirm the decision of the Department denying exemption of the property.

Circuit court reversed; decision of Department reinstated.

STEIGMANN, P.J., and KNECHT, J., concur.