DAVID PEYTON, Petitioner, v. THE DEPARTMENT OF HUMAN RIGHTS *et al.*, Respondents.

Fourth District No. 4—97—0207

Argued February 18, 1998.—Opinion filed September 18, 1998.

COOK, J., dissenting.

Ralph H. Loewenstein (argued), of Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield, for petitioner.

Frederick C. Stavins, City Attorney, and Trisha A. Crowley (argued), Assistant City Attorney, both of Champaign, for respondent City of Champaign.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Paul Racette (argued), Assistant Attorney General, of counsel), for respondent Department of Human Rights.

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner David Peyton brings this direct review of a decision of the chief legal counsel of the Illinois Department of Human Rights (Department) dismissing his charge of discrimination against the City of Champaign (City). 775 ILCS 5/8—111(A)(1) (West 1996); 155 Ill. 2d R. 335. Taken with the case was petitioner's motion to amend the petition for direct review by adding Jacqueline S. Lustig, the Department's chief legal counsel, as an additional named respondent. The Department objected on the basis that the request is untimely. Because we decide that Lustig is not a necessary party, the motion to amend is denied. The issues on appeal are whether (1) the Department applied the correct standard for determining whether petitioner offered sufficient substantial evidence to justify issuance of a complaint, and (2) petitioner offered sufficient substantial evidence to justify the issuance of a complaint. We affirm.

On April 22, 1996, petitioner filed a charge with the Department alleging discrimination against him by the City's fire department

based on sex (Department charge No. 1996SF0646). It alleged petitioner was hired on September 5, 1985, and was demoted from fire inspector on November 17, 1995, because the position was to be reopened and the qualifications for it would be changed; there were no complaints about his job performance to warrant the demotion; after two women who did not meet the original job qualifications threatened to file a grievance, his promotion was eliminated and the position was reposted to allow the women to apply; and previously, once an employee was offered and accepted a position, the position was not taken away unless the individual was found to be ineligible.

The City's verified response admitted petitioner was hired on September 5, 1985, but denied he was demoted. Instead, the City stated that the hiring period was extended because of a revision in the job qualification.

On November 18, 1996, the Department dismissed the charge for lack of substantial evidence to support the allegations. The Department's investigation report found the following uncontested facts: petitioner was hired on September 5, 1985; the fire inspector position was originally announced and posted on August 1, 1995; it was announced as a position outside the bargaining unit, a special duty assignment on a 40-hour workweek schedule; candidates were requested from within the fire-suppression division; City property maintenance inspectors Janet Maupin and Sue Salzman submitted applications, although they were not currently from the fire-suppression unit; petitioner was interviewed and acknowledged as the only candidate on September 5, 1995; Maupin and Salzman were not interviewed and questioned the fairness to women because of the fire-suppression-only requirement; Ernestine Jackson, assistant to the city manager, was concerned with the validity of the requirement and raised the issue with the city manager; and the posting was closed and then reopened to include all City employees. During the investigation, the Department interviewed witnesses, including petitioner; Chris Bezruki, director of personnel; John Corbly, the City's fire chief; Lieutenant Robert Quinlan, petitioner's supervisor; Maupin; and Salzman. The Department found petitioner failed to provide a correlation between his alleged demotion and his gender; evidence did not indicate petitioner was offered the position of fire inspector and could not have been demoted; and the fire inspector position was filled by a male applicant, indicating the City did not discriminate against petitioner because of his gender. The facts supporting these conclusions were stated in detail in the investigation report. Also attached to the report were exhibits considered by the Department.

Following dismissal of the charge, petitioner sought review before

the chief legal counsel of the Department. 775 ILCS 5/7A—102(D)(2)(a) (West 1996). Petitioner submitted exhibits to the memorandum in support of the request for review. The City filed a responsive memorandum.

On February 28, 1997, the Department's chief legal counsel sustained the dismissal for lack of substantial evidence:

"In support of which determinations the Chief Legal Counsel states the following findings of fact and reasons:

1. Complainant filed a discrimination charge with the Department on April 19, 1996, alleging that Respondent demoted him because of his sex, male, in violation of Section 2—102(A) of the Illinois Human Rights Act. On November 18, 1996, the Department dismissed Complainant's charge, making a finding of lack of substantial evidence.

2. Respondent contends that it demoted Complainant because it reevaluated the requirements for the fire inspector position and determined that some of the qualifications needed to be modified. Once the requirements were amended, Respondent considered other applicants, including Complainant, for the position.

3. Evidence from the Department's investigation showed that Complainant was offered the position of fire inspector and accepted it. However, the Department's investigation also revealed that Respondent reevaluated the position shortly after it had offered the position to Complainant. The evidence showed that Respondent decided to modify the requirements for the position to be consistent with national standards. As a result, Respondent posted the revised position and accepted applications for interviews including Complainant's application. The evidence did not indicate that Respondent demoted Complainant because of his sex. Rather, Respondent modified the requirements of the position and offered it to a larger pool of applicants. Thus, the Department's investigation did not show that Respondent's actions were pretextual.

4. In his Request for Review, Complainant does not provide any additional evidence or argument which warrants a reversal of the Department's initial finding. Complainant presents several arguments that he was offered the position which he subsequently accepted. The evidence indicates that this may be true. However, even if Complainant accepted the position, he still failed to prove that he was demoted because of his sex. Complainant argues that the fire inspector position was modified because two applicants 'questioned the fairness to women.' However, the Department's investigation showed that Respondent presented a legitimate, nondiscriminatory reason for modification of the position. Complainant was unable to show, and the Department's investigation failed to

uncover, that Respondent's action was pretextual. In fact, the evidence showed that the fire inspector position ultimately was awarded to a male.

5. Thus, there is insufficient evidence to support the allegation that Complainant was demoted because of his sex.

6. This is a final Order. A final Order may be appealed to the Appellate Court by filing a petition for review by naming the Department and Respondent with the Clerk of the Appellate Court within 35 days after the date of service of this Order. The Department deems 'service' complete 5 days after mailing."

As a preliminary matter, the Department argues that the chief legal counsel must be named as a respondent in the petition for review pursuant to the "agency and all other parties of record" language contained in Rule 335(a) (155 Ill. 2d R. 335(a)). The Department observed that the Human Rights Act (Act) has been amended to allow (1) review of dismissals by the chief legal counsel, instead of the Human Rights Commission (Commission), and (2) direct review in the appellate court of the chief legal counsel's decision. 775 ILCS 5/7—101.1, 7A—102(D)(2)(a), 8—111(A)(1) (West 1996). Relying on *McGaughy v. Illinois Human Rights Comm'n*, 165 Ill. 2d 1, 12-15, 649 N.E.2d 404, 410-11 (1995), and the cases cited therein, the Department argues that, in effect, the chief legal counsel now stands in the position of the Commission and the chief legal counsel must now be named as a respondent just as the Commission had to be in *McGaughy*. The Department further notes that section 3—107(a) of the Administrative Review Law provisions contained in the Code of Civil Procedure (Code) has now been amended to prevent dismissal for failure to name as a respondent an employee, agent, or member of an administrative agency in her administrative capacity (735 ILCS 3—107(a) (West 1996)), but that is not one of the sections of the Code that has been incorporated by reference into Rule 335 (155 Ill. 2d R. 335(i)(2)).

■ We disagree that *McGaughy* requires that the chief legal counsel be named a respondent. The chief legal counsel is an employee of the Department, while the Commission is a separate agency.

"For the purpose of this Act: 'administrative agency' means a person, body of persons, group, officer, board, bureau, commission or department (other than a court or judge) of the State, or of any political subdivision of the State or municipal in the State corporation in the State, having power under law to make administrative decisions.

'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3—101 (West 1996.)

Section 3—101 is expressly incorporated into Rule 335 by reference. 155 Ill. 2d R. 335(i)(2).

In *Mazurek Pharmacy v. Department of Public Aid*, 268 Ill. App. 3d 1085, 1087-93, 645 N.E.2d 365, 366-70 (1994), the court adopted the analysis of this court in *Pontiac Lodge No. 294 v. Department of Revenue*, 243 Ill. App. 3d 186, 187-89, 611 N.E.2d 62, 63-64 (1993), and distinguished *Zientara v. Lottery Control Board*, 214 Ill. App. 3d 961, 968-69, 574 N.E.2d 747, 751-52 (1991), on which the Department relies. In *Mazurek* and *Pontiac Lodge*, the courts found that the Directors were agents of the Departments, relying on section 4 of the Civil Administration Code of Illinois (now 20 ILCS 5/4 (West 1996)). In *Mazurek*, *Zientara* was distinguished because in *Zientara* there was a three-tier appeal process for resolving disputes and the Department's rule expressly stated that any party adversely affected by a final decision or order of the "Director" may obtain judicial review. *Mazurek*, 268 Ill. App. 3d at 1093, 645 N.E.2d at 370.

■ The Department is charged with duties and powers to "issue, receive, investigate, conciliate, settle, and dismiss charges filed in conformity with" the Act. 775 ILCS 5/7—101(B) (West 1996). As it relates to the duties and powers of the chief legal counsel, section 7—101.1 of the Act provides:

"(A) Jurisdiction. The Chief Legal Counsel of the Department shall have jurisdiction to hear and determine requests for review of (1) decisions of the Director to dismiss a charge; (2) notices of default issued by the Director; and (3) dismissals for refusal to accept a settlement offer. Any final order entered by the Chief Legal Counsel under this Section is appealable in accordance with paragraph (A)(1) of Section 8—111.

(B) Review. When a request for review is properly filed, the Chief Legal Counsel of the Department may consider the Director's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Director in response to the request. In his or her discretion, the Chief Legal Counsel of the Department may designate a staff attorney to conduct an investigation into the factual basis of the matter at issue." 775 ILCS 5/7—101.1(A), (B) (West 1996).

■ The chief legal counsel is no less an employee of the Department than is the Director. Neither is a "part[y] of record"; Rule 335(a) expressly distinguishes between the "agency and all other parties of record." 155 Ill. 2d R. 335(a). As long as the Department is named a respondent, it is unnecessary to name the chief legal counsel of the Department as a respondent.

■ The next issue is whether the Department applied the correct standard for determining whether the charge lacked substantial evi-

dentiary support. The Act authorizes the dismissal of a charge based on a determination of no substantial evidence. 775 ILCS 5/7A—102(D)(2)(a) (West 1996). The Director of the Department reviews the investigative report to determine if there is enough evidence to justify the filing of the complaint.

> "(1) Each charge shall be the subject of a report to the Director. The report shall be a confidential document subject to review by the Director, authorized Department employees, the parties, and, where indicated by this Act, members of the Commission or their designated hearing officers.

> (2) Upon review of the report, the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed. The determination of substantial evidence is limited to determining the need for further consideration of the charge pursuant to this Act and includes, but is not limited to, findings of fact and conclusions, as well as the reasons for the determinations on all material issues and questions of credibility. Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A—102(D)(1), (D)(2) (West 1996).

In the past, when a decision of the Commission was being reviewed, the dismissal of the charge would be set aside only if the action was arbitrary or capricious or amounted to an abuse of discretion. *Alcequeire v. Human Rights Comm'n*, 292 Ill. App. 3d 515, 519-20, 685 N.E.2d 974, 976 (1997); *Motley v. Human Rights Comm'n*, 263 Ill. App. 3d 367, 371, 636 N.E.2d 100, 102 (1994). The parties do not suggest a different standard of review even though this appeal is from the decision of the chief legal counsel of the Department.

■ In analyzing employment discrimination actions brought under the Act, a three-part analysis is utilized.

> "First, plaintiff must establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. If a *prima facie* case is established, a rebuttable presumption arises that the employer unlawfully discriminated against plaintiff. Second, to rebut the presumption, the employer must articulate, not prove [citation], a legitimate, nondiscriminatory reason for its decision.

> Finally, if the employer carries its burden of production, the presumption of unlawful discrimination falls and plaintiff must then prove by a preponderance of the evidence that the employer's articulated reason was not its true reason, but was instead a pretext for unlawful discrimination. This merges with plaintiff's ultimate burden of persuading the trier of fact that the employer unlawfully discriminated against plaintiff. [Citation.] This ultimate burden

remains at all times with plaintiff. [Citation.] In the case at bar, brought under the disparate-treatment theory, rather than the disparate-impact theory [citation], the ultimate factual inquiry is whether defendant employer intentionally discriminated against plaintiff." *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79, 545 N.E.2d 684, 687-88 (1989).

It is petitioner's contention that the Department may not reach the second and third prongs of the analysis at the stage of the proceeding involving dismissal of the charge, relying on *Whipple v. Department of Rehabilitation Services*, 269 Ill. App. 3d 554, 556-57, 646 N.E.2d 275, 277 (1995). After reconsidering the *Whipple* decision, we have concluded it no longer correctly states the law. *Webb v. Lustig*, 298 Ill. App. 3d 695, 702 (1998).

Here, the investigation report, before discussing other evidence, stated simply:

, "A. *Prima facie case*

 1. Complainant is male.

 2. Complainant was performing satisfactorily.

 3. Complainant was demoted."

The conclusions of both the Department's report and the chief legal counsel's decision suggest that the second and third parts of the analysis were properly considered.

 It is a civil rights violation for an employer to refuse to promote on the basis of unlawful discrimination. 775 ILCS 5/2—102(A) (West 1996). A municipal corporation is an employer subject to the Act. 775 ILCS 5/2—101(B)(1)(c) (West 1996).

"Employment discrimination may be established by showing disparate treatment and disparate impact. (*Valley Mould & Iron Co. v. Illinois Human Rights Comm'n* (1985), 133 Ill. App. 3d 273, 478 N.E.2d 449.) The former theory requires proof that the employer simply treated some people less favorably than others because of their race, color, religion, sex, or national origin. The latter theory involves proof of employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. (*International Brotherhood of Teamsters v. United States* (1977), 431 U.S. 324, 335 n.15, 52 L. Ed. 2d 396, 415 n.15, 97 S. Ct. 1843, 1854-55 n.15.) Proof of discriminatory motive is required under the disparate treatment theory but not the disparate impact theory and may be inferred in some cases from the mere fact of differences in treatment. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 52 L. Ed. 2d 396, 97 S. Ct. 1843; *Burnham City Hospital v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635.

*Prima facie* proof of discrimination *** based upon disparate treatment, can be established upon a showing by the complainant that (1) he was within the protected class; (2) he was performing according to his employer's legitimate expectations; (3) he was terminated or demoted; and (4) others not in the protected class were treated more favorably. (*Clyde v. Human Rights Comm'n* (1990), 206 Ill. App. 3d 283, 292, 564 N.E.2d 265, citing *Oxman v. WLS-TV* (7th Cir. 1988), 846 F.2d 448.)" *Interstate Material Corp. v. Human Rights Comm'n*, 274 Ill. App. 3d 1014, 1021-22, 654 N.E.2d 713, 718 (1995).

" 'Sex' means the status of being male or female." 775 ILCS 5/1—103(O) (West 1996).

■ In this case, petitioner would testify he was offered and accepted the fire inspector position and that he would start in that position by September 8, 1995. Two women complained about the fairness to women of the qualifications for the job because of the fire-suppression-only requirement. There is no evidence that petitioner was demoted or denied the fire inspector position as a result of the threats of these women. The union also objected because it was a special duty assignment, a nonunion position. The letter of Corbly, which petitioner submitted to the chief legal counsel, stated that the special duty assignment was terminated and there would be a new posting. Petitioner was given an equal opportunity to get the job after the reposting, and he did not get it. Instead, another man was hired for the job. Bezruki's answers to interrogatories indicate that there were 29 applicants for this position after the reposting, and it would appear based on the names listed that there were only four women applicants, none of whom were hired for the job. The fact that petitioner was removed from the fire inspector position and the job was reposted to create a hiring practice that was clearly free from charges of sexual discrimination does not mean the position was eliminated because of his sex. The Department and chief legal counsel could find that there was no substantial evidence that petitioner was demoted or denied promotion because of his sex. The dismissal of the charge is not arbitrary, capricious, or an abuse of discretion. If petitioner has a cause of action, it is for breach of contract.

The decision of the chief legal counsel of the Department is affirmed.

Affirmed.

GREEN, J., concurs.

JUSTICE COOK, dissenting:

Whatever one's views of affirmative action in the filling of new positions, it seems clear that affirmative action cannot justify taking existing jobs, for example, from whites so that they may be given to African-Americans, taking existing jobs from women so that they may be given to men, or vice versa. Would we tolerate a situation where all male employees of the City were discharged, so that females could have the opportunity to show their qualifications for those jobs, even if those male employees "were given an equal opportunity" to get their jobs back? The majority says that the fact that petitioner was removed from his position and the job was reposted "to create a hiring practice that was clearly free from charges of sexual discrimination does not mean the position was eliminated because of his sex." 298 Ill. App. 3d at 1109. The majority seems to be saying that reverse discrimination, or discrimination with a good motive, cannot be discrimination. I do not understand why that is so. Two wrongs do not make a right.

The Department found the "evidence did not indicate petitioner was offered the position of fire inspector." 298 Ill. App. 3d at 1103. The Department was clearly wrong, according to the chief legal counsel: "Evidence from the Department's investigation showed that [c]omplainant was offered the position of fire inspector and accepted it." 298 Ill. App. 3d at 1104. The chief legal counsel went on, however, to say that the City reevaluated the position, modified it to be consistent with (unnamed) national standards, and that the evidence did not indicate that petitioner was demoted because of his sex. The majority states that "[t]here is no evidence that petitioner was demoted or denied the fire inspector position as a result of the threats of these women," and seems to suggest that the union may have been the reason for whatever happened to petitioner. 298 Ill. App. 3d at 1109.

The majority elsewhere, however, tells us that the facts are uncontested and sets out the following chronology: (1) Maupin and Salzman submitted applications; (2) petitioner was interviewed and acknowledged as the only candidate; (3) Maupin and Salzman, who were not interviewed, questioned the fairness of the position to women because of the fire-suppression-only requirement; (4) Ernestine Jackson, the assistant to the mayor in charge of EEOC matters, raised the issue with the city manager; and (5) "the posting was closed and then reopened to include all City employees." 298 Ill. App. 3d at 1103. These uncontested facts are not simply some evidence, they are overwhelming evidence. It is clear what happened in this case.

The questions in this case are whether petitioner was demoted (did he have the position and then later not have it), whether that demotion was made on account of his sex, and whether demotion on

account of sex was justified in the circumstances of this case. It was improper for the Department to refuse to consider the issue of justification by pretending there was no evidence petitioner had accepted the position or that his sex had nothing to do with the job being taken away from him.