No. 3--06--0001

---

Filed December 18, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| COMMUNITY HEALTH CARE, INC., | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Petitioner-Appellee, | ) | Rock Island County, Illinois, |
| | ) | |
| v. | ) | 05--MR–81 |
| | ) | |
| ILLINOIS DEPARTMENT OF REVENUE, | ) | The Honorable |
| | ) | Walter D. Braud, |
| Respondent-Appellant. | ) | Judge Presiding. |

---

JUSTICE McDADE delivered the opinion of the court:

---

Petitioner, Community Health Care, Inc. (CHC), operates a community-based primary care clinic in Rock Island, Illinois. In October 2003 CHC applied for a property tax exemption on the basis of the property's use for charitable purposes. Respondent, the Illinois Department of Revenue (Department), denied CHC's request for a property tax exemption. CHC appealed and the matter proceeded to a hearing before an administrative law judge (ALJ). The ALJ upheld the Department's decision to deny CHC's application for a tax exemption. The ALJ concluded that CHC failed to demonstrate that it qualified as a charitable organization pursuant to section 15-65 of the Property Tax Code (35 ILCS 200/15-65 (West 2002)) or that it used the subject property exclusively for charitable purposes. CHC filed a complaint in the circuit court of Rock Island County for administrative review of the ALJ's order. The court reversed the ALJ's order. For

the reasons that follow, we reverse the trial court and affirm the ALJ's ruling upholding the Department's decision.

## BACKGROUND

CHC applied for, and was granted, permission to operate in Illinois as a not-for-profit corporation. It does not have stock or shareholders. The clinic serves medically underserved populations, residents of public housing, and the homeless. CHC's clients pay for services themselves, with private insurance, and through Medicare, Medicaid, and grants. CHC offers a sliding scale for fees whereby patients receive a discount of 25%, 50%, 75%, or 100% depending on their income. CHC offers the discount to any person with an income at or below 200% of the poverty level and advertises its availability through a variety of media. A patient with an income at or below the poverty level receives a 100% discount. In 2003, approximately 27% of CHC's patients received some level of discounted services. Of those, 58% received the 100 per cent discount. Regardless of the sliding scale CHC requires all patients, excluding homeless persons, to pay at least a $10 co-payment for medical services or $20 for dental services; but CHC will not turn away a patient who cannot provide the co-pay.

CHC reports charity care on its financial statements as "the sum of all patient adjustments which are non-contractual adjustments related to private insurance agreements." "Charity care" includes discounted services as well as Medicare and Medicaid. CHC receives 64.8% of its revenue from patient fees, 29.7% from federal and state grants, and 5.5% from donations. Of the patient fees, 16.7% were discounted and 12.8% came from other payors or private grants. The remainder of the patient fees were paid by Medicare, Medicaid, private insurance, or the patient. CHC reinvests any revenue surplus in its clinics in the form of new equipment and supplies. CHC

pays its physicians a base salary and annual bonuses based on productivity. CHC measures productivity as the physician's gross revenues before any adjustments for Medicare, Medicaid, private insurance, or the sliding scale discount. CHC, which operates four other facilities in the Quad Cities area, opened its Rock Island location in March 2003. The facility houses 16 examination rooms for use by three full-time and part-time medical providers. CHC also plans to have three dental stations in the facility.

The Department appeals the circuit court's order reversing the ALJ's order affirming the denial of CHC's application for a tax exemption.

ANALYSIS

"To determine whether the clinics are eligible for a property tax exemption under section 15-65, we use the test established in *Methodist Old Peoples Home v. Korzen,* 39 Ill. 2d 149, 233 N.E.2d 537 (1968). In order to be eligible, the alleged charity must show that: (1) it is set up for the benefit of an indeterminate number of persons; (2) it has no capital, capital stock or shareholders and earns no profits or dividends; (3) it derives its funds primarily from public and private charity and holds those funds in trust for the objectives and purposes expressed in its charter; (4) it dispenses charity to all who need and apply for it, does not provide gain or profit in a private sense to any person connected with it, and does not appear to place obstacles of any character in the way of those who need and would avail themselves of the charitable benefits it

-3-

dispenses; (5) the property is actually and factually used exclusively for the charitable purpose, regardless of any intent expressed in the organization's charter or bylaws; and (6) *charity use is the primary purpose for which the property is used and not a secondary or incidental purpose*." (Emphasis added.) *Riverside Medical Center v. Department of Revenue*, 342 Ill. App. 3d 603, 607, 795 N.E.2d 361, 365 (2003).

"An appellate court's role is to review the administrative decision, not the circuit court decision." *Calabrese v. Chicago Park Dist.*, 294 Ill. App. 3d 1055, 1065, 691 N.E.2d 850, 857 (1998). "[T]he findings and conclusions of an administrative agency on questions of fact are considered *prima facie* true and correct." *Calabrese*, 294 Ill. App. 3d at 1065, 691 N.E.2d at 857. The decision of the administrative agency should not be overturned unless it is clearly erroneous. *Lutheran Church of the Good Sheperd of Bourbonnais v. Department of Revenue*, 316 Ill. App. 3d 828, 831, 737 N.E.2d 1075, 1078 (2000). "In other words, the determination should not be overturned unless the record leaves the reviewing court with the ' "definite and firm conviction that a mistake has been committed." ' [citation]" *Riverside Medical Center v. Department of Revenue*, 342 Ill. App. 3d 603, 607, 795 N.E.2d 361, 364-65 (2003). Statutes exempting property from taxation are to be strictly construed in favor of taxation. *Harrisburg-Raleigh Airport Authority v. Department of Revenue,* 126 Ill. 2d 326, 331, 533 N.E.2d 1072 (1989). The burden of proving the right to exemption rests upon the party seeking it. *Chicago Patrolmen's Ass'n v. Department of Revenue*, 171 Ill. 2d 263, 271, 664 N.E.2d 52, 56 (1996).

The Department argues CHC did not satisfy any of the six criteria used in determining

whether a tax payer is entitled to a charitable-use exemption. CHC responds it meets the definition of "charity" because it provides free or reduced-fee health care to any patient who presents him or herself to its facility and does not set a limit on the number of people who can receive free or reduced-fee health care services. CHC argues it uses its property primarily for this purpose because it only uses the property for the provision of medical and dental care.

We reverse the decision of the circuit court and affirm the ALJ's ruling affirming the Department's decision to deny CHC's application for a tax exemption. CHC's primary use of its facility is not for its "charitable purpose."

> "The law in Illinois exempts from taxation that property of charitable institutions that is 'actually and exclusively used for * * * charitable or beneficent purposes.' (Ill. Rev. Stat.1985, ch. 120, par. 500.7.) Exclusive use refers to the primary purpose for which the property is being used, not a secondary or incidental purpose. *Northwestern Memorial Foundation v. Johnson*, [141 Ill. App. 3d 309, 490 N.E.2d 161 (1986)]." *Norwegian American Hospital, Inc. v. Department of Revenue*, 210 Ill. App. 3d 318, 322-23, 569 N.E.2d 83, 86 (1991).

CHC's "charitable purpose" is to provide discounted or free medical service to a medically underserved community. By its own admission it uses the property for that purpose only 27% of the time. The remaining 73% of the time, CHC uses the property as a not-for-profit medical clinic. Further, CHC's evidence as to the level of charitable operations at this facility is speculative. CHC relied on "organization-wide financial data to extrapolate the patient and payor

-5-

mix" at the Rock Island facility. In fact, CHC states that it "had little concrete data to support its conclusion other than reliance on its previous years of historical data and knowledge" at other facilities.

"'[The] burden of proving the right to exemption is upon the party seeking it, and in determining whether property is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation.'" *Pontiac Lodge No. 294, A.F. & A.M. v. Department of Revenue*, 243 Ill. App. 3d 186, 192-93, 611 N.E.2d 62, 67 (1993), quoting *Methodist Old Peoples Home,* 39 Ill .2d at 155, 233 N.E.2d at 540. Because CHC admits that its application is based on data from other facilities and an assumption that the facility in question will serve the same number and type of patients, we find that CHC has not carried its burden of proving a right to an exemption at the Rock Island facility. As the question of how much CHC uses the Rock Island facility for its "charitable purpose" is, at best, "debatable," we must resolve the issue in favor of taxation. See *Pontiac Lodge No. 294, A.F. & A.M.*, 243 Ill. App. 3d at 192-93, 611 N.E.2d at 67.

CONCLUSION

We hold that a 27% use is insufficient to find the property is used primarily for a charitable purpose and, regardless, that CHC has failed to provide clear and convincing evidence of its charitable operations--providing reduced cost health care--at the Rock Island facility. The circuit court of Rock Island County's order is reversed, and the ALJ's ruling is affirmed.

Reversed.

HOLDRIDGE and O'BRIEN, JJ., concur.